And our next case is Curtis v. J. Inslee, case number 24-1869. Good morning, Your Honors. May it please the Court, my name is David Schechtsnyder. I represent the plaintiffs and appellants. I have three points to make in the opening. Point one is, we're here today because the District Court did not accept as true plaintiff's allegations that the only drugs available to plaintiffs to comply with the mandates were investigational, granted emergency use authorization status, immunized from liability under the PREP Act, and offered exclusively through the federally funded CDC program, a program that provides the plaintiffs a property right to learn of the drug's risks, benefits, and alternatives, and to exercise the option to accept or refuse them without pressure or penalty. Number two, we're also here because the District Court failed to address the fact that defendants who agreed to the terms of the CDC program were preempted from amending the terms of that program. The program was built on voluntariness. It's a PREP Act program. The defendants are preempted from changing the program to an involuntary one. And third, we're here today because the District Court would not address the fact that because the government owned these drugs but needed a distribution arm for them, they delegated the duty to obtain the legally effective informed consent from any potential recipient that the federal government had. They delegated that to the state, and then the state delegated that to PeaceHealth because PeaceHealth was a signatory to this program. These are drugs that are owned by the government. There is no possible way for PeaceHealth to go to Pfizer and say, you know, I'd like some of those drugs to distribute to individuals. Can't do it. Got to go through the CDC program. This is a federal program, federally owned drugs. They must go through the state's immunization cooperative agreement. So you've got the state involved, and then the state recruits actors to actually distribute the drugs. Let me ask you this. You go ahead. I hear all of that, and I read all of those allegations. But then I shifted really to what I thought was the legal question, and that is under what statute or provision you're making the claim. And so I marched through multiple statutes and my preliminary conclusion, but I'm open to having you tell me otherwise, that there's no private right of action under virtually all those statutes. So what, in your view, is the best legal foundation for making the claim, and leaving aside all of what you said and crediting that as true? Well, the best is we're bringing the case under Section 1983. And 1983 is not exclusive to federal laws, but it also includes the Constitution. So we believe that under the Constitution, our clients have the fundamental right to refuse the injection of investigational emergency use authorization, PrEP Act immunized drugs. Well, I mean, obviously, we have to link your claims to your allegations to individual claims. So I take it for the constitutional claim, you would be claiming the 14th Amendment? That's correct, 14th Amendment. And tell me there, under the 14th Amendment, what, in your view, provides a legitimate claim under the 14th Amendment? Because of the status of these drugs, our clients have the right to their own bodily autonomy to determine what goes in their body, and as a result, they can refuse investigational drugs. So it's not an equal protection claim. It's a substantive due process claim. It's both. It's substantive due process when you're talking about bodily autonomy. It is equal protection when you have individuals who are similarly situated. They're, in this case, health care workers within the state of Washington. They're similarly situated. Then they're told, okay, here's this mandate. Well, the only ones that were punished were the ones that exercised their right to refuse and not the people who exercised their right to accept. See, they're similarly situated. They have the same option, but only those who exercise one option were terminated, were penalized. Well, let's start with the substantive due process claim because it's not that the plaintiffs have been told you must take this drug, period. It's, you know, in order to continue being an at-will employee at a hospital or anything else. And so what is the source of your constitutional authority that says that someone has a liberty interest in being able, you know, not having that forced upon them to have their at-will employment be in jeopardy based on that choice? Well, first of all, with regard to health care workers, they are in possession of a state-issued health care license that is a property interest. And they're being told in order for you to continue to use this license that you've already been given and have been practicing under, you must now inject an investigational drug, emergency use PrEP drug into your body. Are they deprived of a license if they don't take a vaccine? Yes, because then they can't work in the health care system. Well, they lose a job. That job. Right. Or any health care job because the mandate by Governor Inslee applied to all health care workers, not just PeaceHealth workers. PeaceHealth issued a mandate because the governor issued a mandate. So it flows through. So in answer to your question, it's, first of all, they're being deprived of a property interest if they don't, if they're not now injected with this drug. And secondly, the at-will employment doctrine is preempted by the PrEP Act and by the Supremacy Clause. In the PrEP Act, it says if there's any, if any state or local subdivision uses or continues in effect with a law or legal requirement that conflicts with the rights that are in the FDCA statute and the EUA statute, then it's preempted. Let me back up just a little bit. So you said that it sounded like what you're saying there, you had a procedural due process claim. Is that right? Correct. There's a procedural as well. We have substantive procedural. You said like it was terminating some right? Yes, they have. In order to work in their profession as nurses at PeaceHealth, they must have a state-issued license. So that's a property right. So their refusal to take the vaccine results in the termination of their license? It results in them not being able to use their license the way they have been using it. That sounds a little different. Well, what's the difference? If you have a license but can't use it or don't have a license, is there really any difference between those two? We say no. We say that's a violation and that's a deprivation of the rights they have in that property interest. So I'm trying to think about how you get past Jacobson because this executive order applied to, I think, 600,000 different workers. So it wasn't just health care workers. There were lots of people that needed to take a vaccine in order to continue working in these fields. And Jacobson says there's no substantive due process right to say no to a vaccine. And I understand that you're arguing a difference with whether this is a vaccine versus the emergency use drug. But at the end of the day, the constitutional principle is that there's no substantive due process interest. So why doesn't Jacobson foreclose your argument there? Jacobson does not apply here. First of all, Jacobson did not involve an emergency use authorization PREP Act immunized investigational drug. It did not. It was one that was approved. So you have that difference. There was no EUA statute in 1905. There was no PREP Act in 1905. There was no CDC program in 1905. It wasn't the situation where Massachusetts owned all of the smallpox vaccine and determined that it would distribute those drugs. The difference is these are federally owned drugs. This is government property. If you don't believe me, ask Dr. Kirk Moore, who's being prosecuted in Utah right now, and the government is maintaining that these drugs are government property. So there's a big difference between Jacobson and this case, and also factually. Can you explain that to me? What is it about it being a government drug, in your view, that creates a substantive due process right, as opposed to it being a private vaccine that the government says you have to vaccinate for the good of public health? Why does that make a difference? Because the government under the Constitution owes different duties to individuals than private employers do. If there's an FDA licensed drug and it's okay now for private employers to distribute them outside of a governmental program, yes, that's Jacobson. What we have here is government property and people being told that they must take government injections of investigational drugs, drugs that are not at the same level of the drug that was at issue in Jacobson. So Jacobson does not apply to the facts of this case. But you don't dispute that after the vaccine has been approved, the government can require people to take FDA approved vaccines after the fact, even if they have a conscientious objection to it. I want to make sure we're talking about the same thing here, because one of the arguments is that the license for Comirnaty that was issued on August 23rd can somehow apply to the Pfizer-BioNTech vaccine. If that's what you're talking about... How about you just answer my question? An FDA approved vaccine, forget the emergency use. In that situation? In that context, yes. In that situation. Then you would still have to go through the same process that they used in Jacobson, and they used a rational basis there. We don't believe rational basis is involved here. Because we're talking about government owned drugs that are being forced upon people to inject them, we believe it's a fundamental right to reject investigational drugs under the bodily autonomy rule. And it doesn't matter that the investigational drug is clinically identical to the vaccine? See, that's a factual allegation we disagree with. And I'll tell you, the Pfizer-BioNTech vaccine, the EUA drug, came in a six-dose vial and needed to be diluted. Comirnaty comes in a single-dose vial, does not need to be diluted. Those drugs are not the same. And in fact, in the record, there's evidence, Pfizer indicated they were not going to manufacture the approved Comirnaty drug codes. And they said they were going to wait until after their trisucrose formulation was ready. That didn't happen until 2023. I think in some ways you're jumping ahead because I'm still stuck, maybe improperly, but on what's the claim. And so I go through all the statutes, you know, the EUA and this and that and CFR and USC, and I don't see any private right of action. So then I get to your substantive due process. But it seems to me that where we have imposed a substantive due process, we've looked at historical examples, cultural norms, et cetera, et cetera, shock the conscience. And you haven't really stated a claim under that. Is your substantive due process under the 14th Amendment your best foundational claim? Under the 14th Amendment and also under the unconstitutional conditions doctrine, which is also a 14th Amendment, because you can't hinge the exercise of a right upon engaging in that behavior. So we believe it's an unconstitutional condition as well. But we disagree that there's no private right of action under the EUA statute because there are individually conferred rights. It even speaks of individuals must be informed of the option to accept or refuse. What about the bar under the FDCA, under the federal drug? Well, you know, you look at that, you look at 337 and the enforcement, it says, and there was a recent Wilkins decision by the Ninth Circuit, and it ignored one word, a very important word in Section 21 USC 337A. And that is, it says, except as provided in subsection B, which talks about states bringing actions in their own name, all such proceedings for the enforcement order strain violations must be in the name of the United States. What does such mean? The Congress could have easily written all proceedings for the enforcement are in the name of the United States. It says all such proceedings. Such refers back to something else. That refers to the except as provided in subsection B. You look at the actions in subsection B. Those are in the name of the state. They're under Section 341. Those are adulteration of food. But those are still actions in the name of the state. Neither of those two things seem to permit an individual raising a claim, which is what you guys are. But the point is, is that we're not raising a claim under 341, and none of our claims are part of 331, which are the prohibited acts under the FDCA. So if you look at what the government is supposed to be enforcing, those are in Section 331, the prohibited acts. 360BBB-3 is mentioned twice. None of those are applicable to this case. One is the refusal to copy records, and one is for the actual introduction and delivery of the drugs into interstate commerce, none of which is at issue here. So why is there the word such? It's because there are rights that are in the EUA statute that can be enforced by 1983 and should be enforced. Give me the most specific language from that statute that you believe creates a private right of action. It is. Well, as you know, it's a three-step process. But to show in 360BBB-3E1A2, and it says, the appropriate the secretary shall establish appropriate conditions designed to ensure that individuals to whom the product is administered are informed of the option to accept or refuse administration of the product. But that doesn't create a private right of action for the individual. Not a private right of action. It creates a 1983 claim, which are different from a private right of action. No, you need a private. Well, under 1983, you're going to have a statutory right of action. So we look to see if the statute provides a private right of action, or we've already discussed the Constitutional, so we've already talked about the 14th Amendment. But under 1983, you can't have some freestanding claim that doesn't, under a statute that doesn't give you a private right of action. I respectfully disagree. If the statute states a specific cause of action for an individual, they don't need Section 1983. They use the statute. Look at Title VII. That's why you go to the EEOC, and that's the private right of action. If there is no private right of action within the statute, like this enforcement scheme, but there are individually conferred rights, as we've just mentioned, then that's when you use 1983 to enforce those rights, especially when the government is not enforcing them. You know, we have a long line of cases that basically say that there are a whole host of obligations that the government has, but that are not necessarily enforceable by private individuals. I mean, there's a long history and extensive case law on that, and so just because the government abdicates doesn't mean there's a private right of action. No, but looking at the verbiage of the EUA statute. And you would use the word individual as the hook. Exactly. Teletsky tells us to do that. The Supreme Court tells us to look for individually conferred rights that are specific to individuals, and what could be more individual than someone saying, I refuse. I exercise my option to refuse. Let me see if my colleagues have any other questions, and then we'll hear from the other side. And I'll give you a little time for rebuttal. Thank you, sir. Good morning, Your Honors. I'm Ian Rogers from Pacifica Law Group on behalf of Appellate Governor Jay Inslee, and I'm splitting my time with counsel for PeaceHealth, so I'll be taking the first ten minutes. Just watch your time. Thank you. The court should affirm the dismissal of the employees' claims here for three reasons. First, Governor Inslee is entitled to qualified immunity from those claims unless the employees can identify a right that was clearly established at the time of the mandate. As both Judge McEwen and Judge Sanchez indicated, they have no such right. The authority is to the contrary. So qualified immunity precludes their claims. Second, the right that they claim here to refuse vaccination without penalty requires that they establish that the mandate constituted human medical research. But the research-related authorities that they cite confirm that it doesn't, and in any event they're not enforceable under Section 1983, so give them no rights here. And third, the distinction that they attempt to draw that they place at the heart of their case between FDA-approved drugs and EUA-approved drugs is irrelevant and self-defeating. None of the authorities approving or confirming the validity of vaccines turn on FDA approval. Jacobson, in fact, was issued the year before the FDA even existed. And the definition of research doesn't turn on FDA approval either. And their invocation of the PrEP Act is only self-defeating. That's an immunity provision. It gives them no rights. Their constant reference to it only provides an independent basis for dismissal under the PrEP Act's immunity provision. So for those reasons, the Court should affirm dismissal. First, on qualified immunity, again, as the Court's already recognized, over 100 years of precedent since the United States Supreme Court's 1905 decision in Jacobson affirms the validity of vaccine mandates generally. This Court has repeatedly affirmed the legality of Washington's mandate specifically. And in Johnson v. Kotech, the Court addressed the distinction the employees attempt to make here between EUA drugs and FDA-approved drugs and found that even if it was colorable, arguably, they would at best make the mandate debatable and couldn't overcome the presumption of qualified immunity. The same is true here. The employees attempt to get around that by claiming that Governor Inslee had a ministerial duty to accept their choice not to be vaccinated. But even if you take that as true, it was complied with. The employees concede that they did successfully refuse vaccination. So qualified immunity bars the claims. Would you discuss to some degree the due process claim? Because the counsel put a great deal of emphasis on the constitutional claim. And you could argue that intuitively, if you take their characterization of the facts, which is like forcing someone to have an injection against their will, would shock the conscience. And secondly, if you had a license, a medical license, but you can't use it, so it's all but tied up in these, that that would give you a due process claim. What is Governor Inslee's or former Governor Inslee's response to that? So first a clarification. The employees don't allege that they were forced to take the vaccine. They specifically allege, I think repeatedly in their complaint, including at paragraph 143, that they did refuse injection and were penalized for that. So there's no dispute that that is what happened. You know, it's possible a case could arise where there was a forced vaccination, and that would present different issues potentially that aren't at issue here, although conceivably that would still be authorized under Jacobson. There the penalty at issue was much stiffer, as the Third Circuit recognized in the CHCIV Rutgers case. It wasn't just loss of employment. The individual was actually fined and imprisoned as a result of not being vaccinated. So the state's rights here are quite strong. Regarding the right to medical license, I think as you recognize, Judge Baez, it's different to suspend the use of a medical license or to deprive somebody of at-will employment that involves a medical license than to sort of strike the license. And they've cited no authority to suggest that this sort of temporary inability to work in the medical field constitutes a due process right. And, in fact, in the Dittman v. California case, which I believe is cited in co-counsel's brief, the court recognized that a Supreme Court authority generally recognizing an interest in employment in a certain field distinguishes cases where there's a complete prohibition on employment and a sort of temporary inability to work. There's no allegation here, nor could there be, that there was anything other than a temporary inability to use their medical license. The vaccine mandate's no longer in place. So they've not identified any protected property interest that would lead to a substantive due process claim. I think the other point that counsel made is that the use of the word individual and individuals being apprised of certain rights, I think that was in the EUA statute perhaps, that that somehow is transformed into a private right of action. What's the government's position on that? So the authority is expressly to the contrary. In fact, the Supreme Court just recently affirmed that statutes, in order to give a private right of action or an action enforceable under Section 1983, there needs to be explicit rights-conferring language. So that was the Medina v. Planned Parenthood case. The statute at issue there provided arguably much more of a right than the one here does. It provided that Medicaid plans must provide that individuals eligible for medical assistance can obtain assistance from any qualified provider. So it specifically speaks to arguably rights held by these individuals. The statute here is far more attenuated, as you recognize, Judge McEwen. It provides that the HHS secretary has to establish conditions that would ensure people are informed of the right to refuse vaccination. Moreover, as the Third Circuit recognized in the C.H.D.I. v. Rutgers case, it contemplates that there can be consequences for that refusal. It says they not only need to be informed of the right to refuse, they need to be informed of any consequences for the refusal. So it doesn't... And how were people informed of the right to refuse here? The proclamation itself provided for options to seek an exemption or turn down the vaccine. There's no allegation here that anybody was deprived of knowledge that they had an option to refuse the vaccine. Would the proclamation be fairly understood to say that if you refused and you didn't qualify for an exemption, that you would lose your job? Yes. That's true. But again, nothing in the statutes or regulations that the employee site preclude the state from doing that that's consistent with over 100 years of precedent upholding these type of vaccine mandates as a legal exercise of the state's power. And lastly, I just want to confirm or reiterate that this distinction between EUA drugs and FDA drugs is completely irrelevant. The employees have argued that the court's opinion below rested on rejecting their factual assertions that the drugs were different. But the court actually, although it did include that in the background section, its legal analysis didn't turn on that at all. It turned on the absence of any enforceable right, as you noted, Judge McKeown, and the existence of Governor Inslee's qualified immunity. So again, the definition of research that they rely on doesn't turn on the question of FDA approval. It says it's defined broadly as, and this is from 45 CFR 46.102 subsection L, defines research as a systematic investigation designed to contribute to generalized knowledge. Now that doesn't apply for the reasons outlined in our brief. Their theory here is that there was a certain public health reporting that was required that the regulation specifically exempt from the definition of research. But the important thing to recognize now is that the definition of research doesn't turn on FDA approval. So they're trying to cabin their argument to say that this is research because it involves an EUA drug. But if their argument's accepted here, it would apply to any vaccine mandate for any FDA-approved drug in which this type of public health reporting was at issue and could conceivably overturn, again, over 100 years of precedent, affirming the legality of these vaccine mandates. And finally, as discussed, the EUA statute doesn't give them any right to refuse without penalty. The PREP Act also doesn't give them any right to refuse vaccine without penalty. The only source of that right is the definition of research that they can't meet, and their invocation of the PREP Act only provides an independent basis for dismissal by bringing their claims under the immunity provision. What about counsel's argument that the bar under Section 337A would not bar a claim here under the Emergency Use Authorization Act? Well, I don't have the statute in front of me. They did not raise that argument in either their opening brief or their reply, so I've not had a chance to consider it. But that's contrary to this Court's authority, which has twice held in the Johnson v. Kotek case most recently that there is no private right of action under the EUA statute. And again, even if you put that aside, the EUA statute doesn't apply. As the Court recognized, it requires the HHS Secretary to establish conditions. It doesn't place any limitations on Governor Inslee, and even the conditions that the HHS Secretary is required to establish don't require an opportunity to refuse vaccination without penalty. They contemplate that the penalties simply just have to be disclosed, and that was done here. So unless Your Honors have additional questions, I'm going to ask the Court to affirm the dismissal. Thank you. Good morning, Your Honors, and may it please the Court. I'm Whitney Brown for the PeaceHealth appellees. The first question this Court needs to decide is whether the plaintiffs are entitled to bring their claims against the PeaceHealth appellees under Section 1983 in the first place. Answering that question requires determining whether PeaceHealth was acting under color of law. And under this Court's precedence, that question requires first determining the specific conduct of which the plaintiffs complain. This is an important question because, as this Court has recognized, an entity may be a state actor for some purposes but not for others. Here, the specific conduct of which the plaintiffs complain is that PeaceHealth, a private employer, terminated their employment because they declined to comply with PeaceHealth's mandatory vaccination policy. They do not allege, as my friend was just saying, that they received a vaccine from PeaceHealth and that in administering the vaccine, PeaceHealth declined to seek their informed consent or otherwise violated their federal constitutional or statutory rights. They can't because the entire basis of their complaint is that they were terminated because they refused to be vaccinated. So the question here is whether PeaceHealth was a state actor when it terminated plaintiffs' employment for failure to adhere to its vaccination policy. And as our brief explains, Your Honors, all four of the tests this Court applies categorically indicate that PeaceHealth was acting as a private employer, not as a state actor. Plaintiffs in their briefing and here today have entirely failed to engage with either the predicate question, in other words, correctly identifying the specific conduct of which they complain, or the four legal tests that govern this Court's analysis. Without that showing, they cannot prevail. If the Court has any specific questions, I'm happy to answer them. Otherwise, we would ask that the Court affirm. No questions. Thank you, Your Honor. Thank you. Counsel, we'll give you a few minutes. We'll give you three minutes. With regard to consequences, it's only the HHS Secretary that can establish consequences. Governor Inslee offered no authority for how he can assign consequences to someone's option to refuse. There's no authority for Governor Inslee to issue consequences. The EUA statute itself says that it is the HHS Secretary that establishes the consequences. And what did he establish? It's in the August 23, 2021 EUA letter. And it says, if you refuse, the only consequence you will have is you will be told that there will be no change to your medical standard of care. Those are the consequences. So what authority does Governor Inslee have to assign new consequences above and beyond what the HHS Secretary assigned? He has none. He has brought nothing before this court to provide that authority. I mean, he's the head of a state government over state employees. Why doesn't that confer authority as to, in his view, what is important for public health and other reasons for the state? And if he wanted to say everybody needs to have an FDA-licensed flu shot, the ones that are actually FDA-licensed, that's a different case than where we are now. Because, it comes back to this fact, the only drugs available to the plaintiffs to comply with these mandates were EUA, PrEP Act, available only through the CDC program, federal government-owned. That is completely different than an FDA-licensed drug. And to answer PSAL's question about, well, how are we a state actor? You agreed in the CDC program that you would be the one to distribute these drugs on behalf of the federal government through the state's program, and that you would comply with the EUA statute, the PrEP Act, and all of the rules of the CDC program. If you can't engage in that conduct as a private entity, and they couldn't, they can't bring you any authority where they could go to Pfizer and say, I would like to buy that drug, the Pfizer-BioNTech vaccine, under EUA and distribute it. They couldn't do it. And if they did do it, it'd be illegal. So the only way they can be involved in this program is to be operating under color of law, because they couldn't do it any other way. And if they have those responsibilities, but then they try to attach a penalty or a consequence for refusing, again, PeaceHealth does not have that authority. That's not in the EUA statute. The Secretary has the authority. So how are they acting under color of law? They agreed to do so in the CDC program. Guess what? They couldn't charge anybody for the services that they were providing. What private entity does that? No. That shows that their actions with regard to these drugs is under color of law. So when they're interacting with anyone regarding these drugs, whether it's an employer or not, they can't just take off the hat of the CDC program when they're talking to their employees because their employees have the same rights as everyone else. Do you want to summarize? Yes. Wrap up, counsel? You know, the Ninth Circuit is where America looks for leadership on issues of bodily autonomy, whether it's my body, my choice, and the woman's right to choose, whether it's gender-affirming care, or whether now it's the right to refuse an investigational EUA PREP Act drug. This is where America looks for leadership on these issues, and that's why we ask you to reverse the trial court. Thank you, counsel. Thank you all for your helpful arguments. The matter will stand submitted.
judges: McKEOWN, PAEZ, SANCHEZ